UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN S. TADDEO,

                        Plaintiff,

            -vs-                                    06-CV-832C

COUNTY OF NIAGARA, et al.,

                        Defendants.

---

In the complaint in this action, brought pursuant to 42 U.S.C. § 1983 against the County of Niagara, the Niagara County Sheriff's Department, and Sheriff Thomas A. Beilein, plaintiff John S. Taddeo claims that he was wrongfully terminated from his employment as a Deputy Sheriff in violation of his right to due process under the Fourteenth Amendment, and in retaliation for his alleged political activities in violation of the First Amendment and New York State Labor Law § 201-d. Plaintiff moves for partial summary judgment on his due process claim (Item 18), and defendants move for summary judgment dismissing the complaint in its entirety (Item 23).

For the reasons that follow, plaintiff's motion is denied, and defendants' motion is granted.

## **BACKGROUND**

The following facts are not in dispute. Plaintiff was hired by the Niagara County Sheriff's Department in February 1987. He was at all relevant times a member of the collective bargaining unit represented by the Niagara County Deputy Sheriff's Police Benevolent Association (the "Union"). He worked in various capacities as a Deputy Sheriff

until April 1994, when he was assigned to work in the courts. His duties included protection of the judges, maintaining courtroom order, operation of metal detectors, and other security services requiring authorization to carry a weapon.[1]

On October 31, 2005, while he was working at the Niagara County Civic Building, plaintiff was approached by Chief Deputy Carlin and Chief Deputy John Taylor, who advised plaintiff that they were conducting an internal investigation, at the request of Sheriff Beilein, regarding allegations of illegal drug use. They took plaintiff's weapon and transported him to the Sheriff's office, where he executed the following Voluntary Statement:

> I have admitted to the recreational use of illegal substances stemming from a time period of 1990-94 where drugs were prevalent in the N.C. Jail and at parties off duty.
>
> Over the next ten years, I occasional[ly] used illegal substances recreationally.
>
> As per meeting on 10/31/05 I did admit to Chief Deputy Carlin and Chief Deputy Taylor to recently using an illegal substance.
>
> Prior to my being questioned by the aforementioned chiefs, I spoke to Capt. Young on Sat. Oct. 29th, 2005, where I requested Cindy Goss's phone # and spoke with her on Sunday Oct. 30th where she advised to set up appt. with Vicki Brennan at Brylin outpatient facility. Cindy works for E.A.P. [Employee Assistance Programs].
>
> A urine test was administered voluntarily at approx. 3:50 pm. A lock of hair was cut from my head under protest from myself and Union President Edward Briggs.

Item 23, Exhibit L.

---

[1] The background facts set forth herein are adapted from plaintiff's Statement of Undisputed Facts (Item 20) and defendants' Statement of Undisputed Facts (Item 23, Att. 1), submitted in conjunction with the pending summary judgment motions.

Plaintiff was suspended without pay as of October 31, 2005. The urine sample collected that day tested positive for cocaine metabolites (Item 23, Attachment 17, Ex. A), as did a urine sample taken from plaintiff on the next day upon his admission to the BryLin Outpatient Chemical Dependency program (Item 20, Ex. F).

At a meeting which took place on November 10, 2005, plaintiff was served with a "Notice of Disciplinary Charges" pursuant to Article VII of the collective bargaining agreement between the Union and the Sheriff's Department, specifying four separate rule violation charges resulting from the Department's internal investigation, three of which related to his admission to the use of illegal substances (*see* Item 23, Ex. M). The Notice advised plaintiff of his right to arbitration, and that the Sheriff's Department would "seek at any hearing herein the penalty of termination of employment" (*id.*).

In a letter dated November 14, 2005, the Union proposed a "Last Chance Agreement" to settle the charges in lieu of arbitration, allowing plaintiff to continue his employment subject to certain conditions (Item 23, Ex. Q). A meeting to discuss the proposal was held on January 27, 2006, attended by plaintiff, Union President Edward Briggs, Chief Deputy Taylor, and Undersheriff Samuel Muscarella. Following the meeting, the finalized Last Chance Agreement was executed by Sheriff Beilein, Mr. Briggs, and plaintiff, providing in pertinent part as follows:

> This Agreement, dated this 27th day of January, 2006, by and between the County of Niagara and the Sheriff of the County of Niagara (hereinafter referred to as Employer), John S. Taddeo (hereinafter referred to as the Employee) and the Niagara County Sheriff's PBA (hereinafter referred to as the Union).
>
> WHEREAS, the Employer has brought certain disciplinary charges against the Employee, pursuant to the terms and conditions of the Collective Bargaining Agreement between the Employer and the Union, and

WHEREAS, the Employee has been placed on and is serving, or has served, a thirty-day suspension without pay as a result of said charges being placed, in accordance with the provisions of the said bargaining agreement; and

WHEREAS, the parties to this Agreement are desirous of resolving the said disciplinary charges and settling outstanding matters, to the mutual satisfaction and benefit of all involved;

NOW THEREFORE, in consideration of the mutual promises made herein, it is hereby agreed as follows:

1. The Employee shall continue in the employ of the Employer, subject to the following conditions:

    a. The Employee shall return to work at his position on January 30, 2006.
    b. The Employee shall comply with, and shall complete any and all treatment programs and any follow-up treatment recommended by this agency.
    c. The Employee will accept the thirty-day suspension without pay.
    d. The Employee would sign the necessary documentation for all records of treatment to be released to the Employer.
    e. The Employee agrees to random drug testing of his urine for both alcohol and drugs.
    f. The Employee agrees to forfeit 10 vacation days to the Employer in 2006.
    g. The Employee and the Union would agree this is a last chance agreement regarding this issue.

2. If the Employee were to test positive for alcohol, illegal drugs or prescription drugs that have not been prescribed at any time during his future employment, he would waive his right to a grievance, arbitration and any other legal process and the decision on future issues would be final and binding on the parties. The Employee shall fully comply with all departmental rules, regulations, policies and directives. The Employee acknowledges that failure to comply or if he should engage in conduct hereafter that would subject him to disciplinary action, that, in either event, nothing in this agreement shall preclude any future disciplinary charges or action.

3. The terms and conditions set forth herein shall remain in effect from the date hereof through a date of five (5) years after the Employee has successfully completed all the conditions of the Employee Assistance Program, as certified by the Program to the Employer. At

> the expiration of said five (5) years, and if the Employee shall maintain his employment with the Employer, he shall have full rights and benefits as such an Employee and as a member of the Collective Bargaining Unit.

(Item 20, Ex. H).

Plaintiff returned to work on January 30, 2006. He continued to attend treatment at BryLin, and successfully completed the program in March 2006 (*see* Item 20, Exs. I, J).

On April 10, 2006, plaintiff submitted to random urine testing performed by the Sheriff Department's forensic laboratory. The test results were negative for alcohol, cocaine, or any other illegal or unprescribed drugs (Item 23, Attachment 17, Ex. B). That same day, plaintiff went to Quest Diagnostics to obtain his own independent drug testing pursuant to a prescription from his personal physician. The results of this test were also negative for illegal substances (*see* Item 20, Ex. N).

A second random urine sample was collected from plaintiff on May 31, 2006, when he returned to work following vacation and holiday leave. Testing of this sample by the Sheriff Department's forensic laboratory was positive for cocaine metabolites (Item 23, Attachment 17, Ex. C). This result was confirmed by forensic toxicology testing performed by the Erie County Medical Examiner's Office (*id.*).

The record also contains the results of an independent urinalysis performed at Riverfront Medical Services on May 22, 2006, indicating a positive detection of cocaine metabolites (*see* Item 23, Exs. S, T, & U).

A third random urine sample was collected from plaintiff on June 7, 2006, at his home. Testing of this sample by the Sheriff's Department also indicated the presence of

cocaine metabolites (Item 23, Attachment 17, Ex. D), which was once again confirmed by the Erie County Medical Examiner (*id.*).

Plaintiff attended a meeting on June 15, 2006 with his Union representative (Sergeant Lance Wendt), Undersheriff Muscarella, and Chief Deputy Taylor. He was advised at the meeting that the urine samples collected on both May 31 and June 7 had tested positive for cocaine metabolites, and that he was being terminated from his employment for violation of the Last Chance Agreement, effective immediately.

Plaintiff filed this action on December 15, 2006, seeking declaratory relief, reinstatement with back pay and benefits, compensatory and punitive damages, and attorney's fees. He claims that the random collection and testing of his urine samples was performed in direct violation of the Sheriff Department's own uniform policy and procedure for employee drug testing, and in retaliation for plaintiff's open support of Sheriff Beilein's opponent in the November 2005 election. The complaint sets forth the following three causes of action:

1. Violation of due process guaranteed by the Fourteenth Amendment to the United States Constitution.

2. Retaliation for exercising his right to freedom of political expression and association, in violation of the First Amendment to the United States Constitution.

3. Discrimination against the engagement in political activities, in violation of New York Labor Law § 201-d.

(Item 1).

Following completion of discovery, both parties filed summary judgment motions. Plaintiff's motion seeks partial summary judgment in his favor on his first cause of action finding that, as a matter of law, defendants violated his due process rights by failing to

follow established procedures for employee drug testing and by denying him adequate notice and opportunity to challenge the validity of the tests which resulted in his termination from employment. Defendants' motion seeks summary judgment dismissing the complaint in its entirety on the ground that plaintiff knowingly and voluntarily waived his right to pursue any legal process to challenge his termination–including this action–when he entered into the Last Chance Agreement.

## DISCUSSION

### I.  Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 247 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255.

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991). Summary Judgment cannot be entered "'if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party."

*Yurman Design, Inc. v. Golden Treasure Imps., Inc.*, 275 F. Supp. 2d 506, 508 (S.D.N.Y. 2003).

The trial court's function at the summary judgment stage "is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Services, Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *see also Keystone Manufacturing Co., Inc. v. Jaccard Corp.*, 394 F. Supp. 2d 543, 549 (W.D.N.Y. 2005).

**II.   Plaintiff's Motion for Partial Summary Judgment**

Plaintiff contends that he is entitled to judgment as a matter of law on his claim that the manner in which his urine samples were collected and tested violated the Sheriff Department's rules regarding employee drug testing and, as a result, violated his due process rights. As outlined in the complaint, plaintiff alleges that each time he was subjected to so-called "random" urine sampling by defendants, it was without reasonable suspicion of drug use, and that the drug testing was performed in direct violation of the procedures set forth in General Order 311(a) of the Department's Rules of Conduct[2] (*see*

---

[2]General Order 311(a) provides, in pertinent part:

IV.   Drug Testing

    A.   Upon reasonable suspicion that the member is using or is under the influence of drugs . . . , an assigned supervisor or designated person of the same sex as the employee shall:

        1.   Obtain an uncontaminated sample container;

        2.   Direct the member to a men's or women's rest room within the Office of the Sheriff or medical facility where appropriate steps shall be taken to ensure privacy while the procedure is being

Item 1, ¶¶ 8-10, 14-23). Somewhat more specifically, he claims that the supervisor conducting the procedures on each occasion, Captain Lombardo, failed to direct him to a restroom at the Sheriff's Office or at a medical facility, failed to observe him voiding, and failed to properly secure the urine sample by having both the supervisor and plaintiff put their initials on the container. He also claims that he was denied adequate notice of the positive test results and a meaningful opportunity to challenge the validity of those results by presenting the negative results of contemporaneous independent urinalyses (*id.*; *see also* Item 19, pp. 11-12).[3]

It is well settled that in order to establish that his termination from public employment deprived him of due process, plaintiff must satisfy a two-step inquiry. First, it must be determined whether plaintiff had a property right in his continued employment, protected by the Constitution. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *see*

---

                    completed.

3.     Instruct the member of the proper procedure for the test;

4.     Observe the member[ ] voiding.

5.     Secure the sample as evidence, sealing same with evidence tape in the presence of the employee. Both the supervisor and member shall initial the sealed container.

6.     Secure all evidence and ensure prompt deliver[y] to the Forensic Laboratory.

7.     Prepare a detained report outlining all aspects of the investigation . . . .

(Item 23, Ex. J).

[3] In response to plaintiff's motion, defendants contend that the court should disregard the "notice and opportunity to be heard" aspect of plaintiff's due process claim because it was not set forth in the pleadings and was raised for the first time in plaintiff's memorandum in support of his motion for partial summary judgment. Because the court finds that factual issues preclude summary judgment in favor of plaintiff on his due process claim, this contention need not be addressed.

*also Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972); *Ware v. City of Buffalo*, 186 F. Supp. 2d 324, 331 (W.D.N.Y. 2001). If a protected property right exists, plaintiff must then establish that he was deprived of the right without due process of law. This leads to the second step of the inquiry: determining what process was due, and whether the constitutional minimum was afforded to him in his particular case. *See Matthews v. Eldrige*, 424 U.S. 319 (1976); *see also Ware*, 186 F. Supp. 2d at 331-32.

Assuming without deciding that plaintiff can establish a constitutionally protected property interest in his continued employment upon signing the Last Chance Agreement,[4] plaintiff's summary judgment motion fails at the second step of the court's inquiry. As the Supreme Court made clear in the *Loudermill* decision, the minimum protections of due process under the Fourteenth Amendment in the public employment context requires that employees be afforded notice and "'some kind of a hearing'" prior to being deprived of their protected property interest. *Loudermill*, 470 U.S. at 542 (quoting *Roth*, 408 U.S. at 569-70). The Court was careful to point out that "the pretermination hearing need not definitively resolve the propriety of the discharge." *Id.* at 545. Rather, the purpose of the pretermination hearing is to provide "an initial check against mistaken decisions–essentially

---

[4] To be sure, defendants do not concede that plaintiff has met his summary judgment burden in this regard, but rather have cited authority for the proposition that a public employee can waive his or her property right in continued employment by, for example, entering a Last Chance Agreement. *See Gilliam v. New York City Department of Sanitation*, 2008 WL 555327 at *3 (N.Y.Sup.Ct. March 3, 2008) (public employee may waive permanent employment status to settle disciplinary proceeding); *cf. Lewis v. Mt. Morris Tp.*, 2007 WL 3026035 at *6 (E.D.Mich. 2007) (public employee terminated for violating last chance agreement for alcohol-related issues waived property right stemming from expectation of continued employment). The legal effect of the Last Chance Agreement on plaintiff's claims in this case is addressed in the text below in the context of the court's discussion of defendants' summary judgment motion.

a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545-46.

> The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee.

*Id.* at 546.

Based on the substantial materials submitted in connection with the pending motions in this case, and drawing all justifiable inferences in favor of defendants, reasonable jurors could conclude that plaintiff was provided adequate notice of the employment consequences of positive test results based on the urine samples collected on May 31 and June 7, 2006, as well as an adequate opportunity to contest those results at the June 15, 2006 meeting. He was provided clear written notice in November 2005 that disciplinary charges were pending against him as the result of having admitted to the use of illegal substances, and that defendants intended to seek termination as a sanction. The Last Chance Agreement, proposed by the Union on plaintiff's behalf to afford him one last opportunity to save his job as consideration for settling the disciplinary charges, clearly contemplated that plaintiff would submit to random urine sampling, and that testing positive would result in his waiver of the right to grieve, arbitrate, or otherwise challenge defendants' decision regarding his future employment.

In addition, plaintiff's independent drug test on May 22, 2006 was positive for cocaine metabolites. This fact alone provides a reasonable basis to conclude that plaintiff

was not unfairly surprised by the positive results of the random samples taken on May 31 and June 7, 2006.

Likewise, the court's review of the discovery materials on file reveals the presence of genuine issues of material fact regarding whether plaintiff was afforded a meaningful opportunity at the June 15 meeting to challenge the grounds for his termination. For example, plaintiff testified at his deposition that he requested the meeting to voice his concerns about the manner in which the drug testing was being performed. He brought to the meeting the results of his independent drug tests, as well as his medications, herbal supplements, and teas. He was directly advised that the May 31 and June 7 samples tested positive for cocaine metabolites. He denied any drug use during the testing period, and he offered various explanations as to how the positive results might have occurred (*see* Item 23, Ex. C (Taddeo Dep.), pp. 216-17, 219-21; *see also id.*, Ex. F (Muscarella Dep.), pp. 80-86). Believing defendants' version of the import of this evidence, reasonable minds could differ as to whether the notice and opportunity to be heard provided to plaintiff prior to his termination for violating the Last Chance Agreement comported with the constitutional minimums of due process.

Plaintiff contends that focusing on whether he was given adequate notice and opportunity to be heard misconstrues the true nature of his due process claim: defendants' clear violation of the drug testing procedures set forth in General Order 311(a). This contention must be rejected. The procedures in General Order 311(a) apply "[upon] reasonable suspicion" of employee drug use (*see* note 2, *infra*), a requirement which was clearly and unambiguously superseded by plaintiff's agreement to submit to "random" drug

testing as a condition of being afforded one last chance at continued employment (Item 20, Ex. H, ¶ 1(e)).

Beyond this, the court's review of the discovery materials on file reveals that defendants have come forward with sufficient proof to raise genuine issues of material fact with respect to virtually all of plaintiff's procedural challenges. Merely by way of example, Captain Lombardo affirms that he collected the random urine samples from plaintiff on April 10, May 31, and June 7, 2006, and on each occasion he observed plaintiff "voiding" into a plastic specimen container; he capped and sealed the specimens in plaintiff's presence with evidence tape; and he personally maintained possession of the specimens until he turned them over to the forensic chemist, Francis Bellardini, who performed the drug testing on each sample (*see generally* Lombardo Aff. (Item 23, Att. 15) and Exs. A-C attached thereto; *see also generally* Bellardini Aff. (Item 23, Att. 16) and Exs. A-D attached thereto).

For these reasons, the court finds that plaintiff has failed to establish that he is entitled to judgment as a matter of law on his due process claim.

### III. Defendants' Motion for Summary Judgment

Defendants' summary judgment motion is based primarily on the ground that, by signing the Last Chance Agreement, plaintiff knowingly and voluntarily waived his right to challenge his termination by pursuing the claims in the complaint. In this regard, courts in the Second Circuit have routinely held that agreements containing waivers of the employee's right to pursue constitutional claims as consideration for settling disciplinary charges, such as the Last Chance Agreement signed by plaintiff in this case, are valid and

enforceable where the waiver is knowingly and voluntarily made. *See, e.g., Kwok v. New York City Transit Authority*, 2001 WL 829876 at *5 (S.D.N.Y. July 23, 2001) (citing *Zveiter v. Brazilian Nat'l Superintendency of Merchant Marine*, 833 F. Supp. 1089, 1096-97 (S.D.N.Y. 1993); *Knight v. State of Conn.*, 2000 WL 306447 at *7 (D.Conn. February 22, 2000). The voluntariness determination is based on the totality of the circumstances, considering such factors as the employee's education and experience, the amount of time the employee was given to review the release, the employee's role in negotiating the waiver, the clarity of the agreement, whether the employee consulted with an attorney or was given ample opportunity to do so, and whether the consideration given in exchange for the release exceeds employee benefits to which the plaintiff was entitled. *See Borman v. AT&T Communications, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989).

Applying these factors to the undisputed facts and circumstances presented in this case, there can be no doubt that plaintiff knowingly and voluntarily entered the Last Chance Agreement. Plaintiff is a college graduate (Item 23, Ex. C, pp. 18-19). He had nearly 19 years of experience with the Sheriff's Department (*id.*, p. 36), and was fully familiar with the Department's disciplinary procedures, having successfully challenged a prior termination of his employment through arbitration under the collective bargaining agreement (*id.*, pp. 47-52). He has been represented by the Union throughout the disciplinary process resulting from the investigation following his admission to the use of illegal substances. He testified at his deposition that he authorized the Union to negotiate the Last Chance Agreement on his behalf, and that he understood the terms of the Agreement providing for his termination from employment if he ever tested positive for

drugs again (*see id.*, pp. 154-61). The Agreement was drafted in November 2005 and was not finally executed until January 2006, giving plaintiff more than ample time to consider the terms and to seek counsel. Finally, it is beyond dispute that the Last Chance Agreement provided plaintiff with a benefit–continued employment–beyond which he would otherwise have been entitled to.

Upon consideration of these circumstances, and drawing all reasonable inferences in plaintiff's favor, no reasonable juror could conclude that plaintiff did not knowingly and voluntarily enter into the Last Chance Agreement, or that he did not fully understand the consequences of positive drug test results. Accordingly, the court finds plaintiff's waiver of his right to challenge his termination for violating the Last Chance Agreement by way of any grievance, arbitration, or "other legal process," including this lawsuit, to be valid and enforeceable.

For these reasons, defendants are entitled to summary judgment in their favor, dismissing the complaint in its entirety.

## **CONCLUSION**

Based on the foregoing, plaintiff's motion for partial summary judgment (Item 18) is denied, defendants' motion for summary judgment (Item 23) is granted, and the complaint is dismissed.

The Clerk of the Court is directed to enter judgment in favor of defendants.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: March 12, 2010
p:\opinions\06-832.feb1110

-15-